UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOONIS AHMED, | CASE NO. C25-2718JLR |
| Petitioner, | ORDER |
| v. | |
| PAMELA BONDI, et al., | |
| Respondents. | |

## I.   INTRODUCTION

Before the court is *in forma pauperis* Petitioner Yoonis Ahmed's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and request for injunctive relief.  (Pet. (Dkt. # 5); Reply (Dkt. # 13).)  Respondents United States Department of Homeland Security ("DHS") Secretary Kristi Noem, United States Attorney General Pamela Bondi, United States Citizenship and Immigration Services ("USCIS"), and Acting Director of the Seattle Field Office of United States Immigration and Customs Enforcement ("ICE") Camilla Wamsley (together, "Respondents") oppose the petition.  (Resp. (Dkt. # 10).)

The court has considered the petition, the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS Mr. Ahmed's petition.

## II. BACKGROUND

Mr. Ahmed is a citizen of Somalia presently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Pet. at 4.) He is subject to a final order of removal and was originally ordered removed on May 7, 2013. (*Id*. at 3; *see also* Morris Decl. (Dkt. # 12) ¶ 2, Ex. 4 (Final Order of Removal).) An immigration judge granted him Deferral Under the Convention Against Torture ("DCAT"), however, and he was released from detention without being placed on an order of supervision. (Delgado Decl. (Dkt. # 11) ¶ 8.) On May 28, 2025, DHS re-detained Mr. Ahmed when United States Customs and Border Protection ("CBP") encountered him near Blaine, Washington, and he has been in custody ever since. (Pet. at 3; *see also* Morris Decl. ¶ 2, Ex. 2 (Record of Inadmissible Alien) at 4-5 (describing the encounter).)

Mr. Ahmed was born in Somalia and was admitted to the United States as a refugee on October 24, 2006. (Pet. at 6; Record of Inadmissible Alien at 4.) Mr. Ahmed was convicted of two crimes involving moral turpitude in Utah: theft by deception in 2009 and aggravated robbery in 2011. (*See* Delgado Decl. ¶ 4; *see also* Record of Inadmissible Alien at 4 (listing Mr. Ahmed's arrests and convictions).) On May 1, 2012, DHS transferred Mr. Ahmed from the Multnomah County Parole and Probation office and booked him into the NWIPC. (*See* Delgado Decl. ¶ 6.) Shortly thereafter, he petitioned an immigration judge for a bond hearing – a request that the immigration judge

later denied. (*Id.* ¶ 7.) On May 9, 2012, DHS issued a Notice to Appear to Mr. Ahmed charging him as removable under Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA") for being a noncitizen who, at any time after admission, has been convicted of two crimes involving moral turpitude. (Delgado Decl. ¶ 5; *see* Morris Decl. ¶ 2, Exs. 1-2 (Notice to Appear; Record of Inadmissible Alien).) On May 7, 2013, based largely on Mr. Ahmed's criminal history, the immigration judge issued a final order of removal, but granted DCAT. (Delgado Decl. ¶ 8; *see* Final Order of Removal (providing the immigration judge's reasons for the order of removal).) On May 16, 2013, DHS released Mr. Ahmed from detention and did not place him on an order of supervision. (Morris Decl., Ex. 3 (Detention Release Information) at 2; Delgado Decl. ¶ 8.)

     On May 28, 2025, DHS agents re-detained Mr. Ahmed. (Pet. at 3; Delgado Decl. ¶ 9.) Respondents represent that they obtained travel documents for Mr. Ahmed on July 24, 2025, but did not then effectuate his removal due to DCAT protection pursuant to 8 C.F.R. § 1208.17. (Delgado Decl. ¶ 10.) Respondents further represent that in December 2025, they met with Mr. Ahmed "twice to discuss additional countries for removal" and that he "refused to assist or provide any information[.]" (Delgado Decl. ¶ 11.) Respondents also represent that they unsuccessfully requested third country removal for Mr. Ahmed for Costa Rica and Australia in December 2025 and, on January 13, 2026, submitted third country removal requests to Panama and El Salvador. (Delgado Decl. ¶¶ 12-14.)

On December 30, 2025, Mr. Ahmed filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  He argues that his detention violates the Administrative Procedure Act ("APA"), the INA, 8 U.S.C. § 1231(a), and its implementing regulations; the Convention Against Torture; the Fifth Amendment's Due Process Clause; and the Eighth Amendment.  (*See* Pet.)  Mr. Ahmed's petition is now fully briefed and ripe for the court's review.

### III.    ANALYSIS

The court first considers the legal standard for detention of noncitizens during immigration proceedings and then turns to the parties' arguments concerning the present immigration habeas petition.

**A.    The Legal Standard for Detention of a Noncitizen During Immigration Proceedings.**

The INA permits detention of noncitizens present in the United States during immigration proceedings.  8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a).  A noncitizen who is ordered removed must be removed by DHS within 90 days, *id*. § 1231, and, during the removal period, the noncitizen must be detained, *id*. § 1231(a)(2).  When the government fails to remove the noncitizen during that period, the statute only permits further detention of the noncitizen under certain conditions: (1) the noncitizen is "inadmissible" under certain grounds; (2) the noncitizen is "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy; or (3) the noncitizen has been "determined by the

Attorney General to be a risk to the community or unlikely to comply with the order of removal[.]" *Id*. § 1231(a)(6); *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

Although ICE is permitted to hold noncitizens in detention beyond the initial 90-day window subject to certain limitations, the INA does not permit indefinite detention. *Zadvydas*, 533 U.S. at 689 (affirming that the INA limits the "post-removal-period detention to a period reasonably necessary to bring about [the noncitizen's] removal from the United States"). Furthermore, ICE may extend a noncitizen's detention only until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. The Supreme Court has held that a six-month period of detention is presumptively reasonable. *Id*. After six months of detention, a noncitizen seeking release from detention bears the burden of showing that "there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. The burden then shifts to the government to present "evidence sufficient to rebut that showing." *Id*. If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 298-99 (2018).

B.  **DHS's Continued Detention of Mr. Ahmed's is Unlawful.**

Mr. Ahmed argues, in pertinent part, that his detention is unlawful because there is no significant likelihood of his removal in the reasonable future and, as such, his continued detention violates the Supreme Court's holding in *Zadvydas*. (Pet. 19-20.) Respondents counter that Mr. Ahmed is lawfully detained pursuant to 8 U.S.C. § 1231. (Resp. at 3-5.) The court agrees with Mr. Ahmed.

1    DHS's continued detention of Mr. Ahmed does not comply with the Supreme
2  Court's holding in *Zadvydas* and thus constitutes a violation of Mr. Ahmed's due process
3  rights. Mr. Ahmed was ordered removed on May 7, 2013, (Delgado Decl. ¶ 8; *see also*
4  Final Order of Removal), and then held in ICE custody until May 16, 2013, (Detention
5  Release Information at 1). DHS re-detained him on May 28, 2025. (Record of
6  Inadmissible Alien at 3.) Thus, because Mr. Ahmed has been detained for more than six
7  months since the entry of his final order of removal, his *Zadvydas* grace period ended, at
8  latest, in November 2025. 533 U.S. at 701. Consequently, the burden shifts to
9  Respondents to show Mr. Ahmed is likely to be removed in the foreseeable future. *Id*.
10    The court concludes that Respondents have failed to meet their burden. Although
11  Respondents represent that "ICE is actively working to obtain travel documents for [Mr.
12  Ahmed's] removal to a third country[,]" and that "there is a significant likelihood of
13  removal in the reasonably foreseeable future[,]" (Resp. at 2; *see* Delgado Decl. ¶¶ 11-14),
14  they do not present evidence that rebuts Mr. Ahmed's initial showing that his removal to
15  Somalia is not reasonably foreseeable (*see generally* Resp.). In fact, it is undisputed that
16  Mr. Ahmed was ordered removed but remains subject to the DCAT, which, at present,
17  bars his removal to Somalia. (Pet. at 19; Delgado Decl. ¶ 8; Final Order of Removal at
18  11-12 (finding that Mr. Ahmed "has demonstrated a sufficient likelihood of torture in
19  Somalia with the acquiescence of the ruling regime and no internal relocation
20  possibility").) Thus, although DHS received travel documents to remove Mr. Ahmed to
21  Somalia on July 24, 2025, it was not able to effectuate his removal due to his DCAT
22  protections. (*See* Delgado Decl. ¶ 8.) Additionally, Respondents represent that they sent

third country removal requests to Costa Rica and Australia, but that these countries denied the requests. (*Id*. ¶¶ 12-13.) Respondents concede that although they continue to submit additional requests for permission to remove Mr. Ahmed to a third country, even after holding him in detention in excess of eight months, they have not been able to successfully effectuate his removal. (*See generally* Resp.; *see also* Delgado Decl. ¶ 14.) ICE may not hold Mr. Ahmed indefinitely while it awaits travel documents from third countries. *Zadvydas*, 533 U.S. at 689. Thus, the court concludes that DHS's continued detention of Mr. Ahmed violates his due process rights.

**C.     Membership in the *D.V.D.* Class does not Preclude Mr. Ahmed from Asserting his Third Country-Removal Claims.**

Respondents argue that the court "should decline to exercise jurisdiction over [Mr. Ahmed's] third country removal claim as a matter of comity" because he is a member of the certified plaintiff class in *D.V.D v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). (Resp. at 18.) Here, however, "dismissal [of Mr. Ahmed's petition] would be inappropriate because [Mr. Ahmed] seek[s] relief [that] he is unable or unlikely to obtain in the *D.V.D.* litigation." *Sanchez v. Bondi*, No. C25-2573KKE, 2026 WL 160882, *4 (W.D. Wash. Jan. 21, 2026). Furthermore, Mr. Ahmed's due process claim is "not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event [that] he fears persecution in a designated third country—a claim not at issue in *D.V.D.*" *Id*. (citing *Nguyen v. Scott*, 796 F. Supp. 3d 703, 729 (W.D. Wash. 2025) (compiling cases)). Finally, for the reasons thoroughly discussed in *Nguyen v. Scott*, the court rejects Respondents' contention that

1  Mr. Ahmed's petition should be dismissed because "the Supreme Court's stay of the
2  preliminary injunction [in *D.V.D.*] is both precedent and the result is binding" on Mr.
3  Ahmed as a member of the *D.V.D.* class. (Resp. at 18 (so contending); *see Nguyen*, 796
4  F. Supp. 3d at 730-33 (concluding that where, as here, the Supreme Court offers no
5  clarity or detail about why it granted the stay, lower courts "cannot ascertain from the
6  Supreme Court's emergency order whether it found the government likely to succeed on
7  its jurisdictional or substantive claims" and, thus, the order is not treated as precedential);
8  *see also Sanchez*, 2026 WL 160882 at *5 (compiling cases rejecting the contention that a
9  petitioner's *D.V.D.* class membership bars his petition for habeas corpus).) Thus, the
10 court concludes that Mr. Ahmed's membership in the *D.V.D.* class does not prevent the
11 court from adjudicating his claims for individual relief in this habeas action.

12 **D.    The Court Grants in Part Mr. Ahmed's Requests for Injunctive Relief.**

13         Mr. Ahmed seeks three forms of prospective injunctive relief: (1) an injunction
14 prohibiting Respondents from re-detaining Mr. Ahmed without first holding a hearing
15 before a neutral decisionmaker, where the government bears the burden of establishing
16 flight risk or danger to the community by clear and convincing evidence based on
17 changed circumstances since Mr. Ahmed was previously released; (2) an injunction
18 prohibiting Respondents from removing or seeking to remove Mr. Ahmed to a third
19 country without notice and meaningful opportunity to respond in compliance with the
20 statute and due process in reopened removal proceedings; and (3) an injunction
21 prohibiting Respondents from removing Mr. Ahmed to any third country. (*See* Pet. at
22 23.) The court addresses each request in turn.

1    As an initial matter, the court may provide injunctive relief if Mr. Ahmed meets the standard for a permanent injunction.  (*See id*. at 3-4); *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (providing the standard for permanent injunctive relief).  "According to well-established principles of equity, a [petitioner] seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." (*Id*.)  Mr. Ahmed must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between him and Respondents, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. (*See id*.) (citations omitted).  "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *see also Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights.") (citations omitted).  Courts in this District have consistently ruled that Respondents' third-country removal policy does not comport with due process and have ordered permanent injunctions of the nature Mr. Ahmed seeks here.  *See Sanchez*, 2026 WL 160882 at * 5 (compiling in-district cases so concluding).  Thus, because Mr. Ahmed's liberty and removal to a third country are at issue and he has shown a constitutional right and a violation, the court concludes that permanent injunctive relief is warranted.

1. Respondents Must Comply with Federal Regulations on Re-Detention of Noncitizens.

Mr. Ahmed argues that by virtue of due process, he is entitled to a hearing prior to his re-detention. (Pet. at 21; Reply at 4.) Respondents do not address this argument. (*See generally* Resp.) The court agrees with Mr. Ahmed. The re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13 which states, in part, that DHS "may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the [agency] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The regulation also requires that, "[u]pon revocation [of release], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.*. § 241.13(i)(3). Therefore, in the event that Respondents seek to re-detain Mr. Ahmed, they must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13 and prove by clear and convincing evidence that Mr. Ahmed presents a risk of flight or danger. *See Sanchez*, 2026 WL 160882 at *6 (so concluding); *Toktosunov v. Wamsley*, C25-1724TL, 2025 WL 3492858, at *6 (W.D. Wash. Dec. 5, 2025) (discussing the standard of proof at a civil detention hearing).

//

//

ORDER - 10

      2. <u>Mr. Ahmed's Request for Notice and an Opportunity to Respond Prior to Attempted Removal to a Third Country is Granted.</u>

Mr. Ahmed also asserts that he has a constitutional right to notice and a meaningful opportunity to respond to any efforts by Respondents to remove him to a third country. (Pet. at 23.) Respondents, in response, (1) summarize the July 2025 memo setting forth DHS's most recent policy for removal of noncitizens to third countries, and (2) contend that "DHS policy already provides the process [Mr. Ahmed] requests." (*See* Resp. at 9-10, 16-17 (asserting that DHS's policy already provides "notice and a meaningful opportunity to respond" before DHS removes Mr. Ahmed to a third country, but "does not require that proceedings be reopened automatically").) Removal of a noncitizen to a third country is permitted under certain circumstances, including instances when the government cannot remove a noncitizen to the country specified in the removal order. *See Sanchez*, 2026 WL 160882 at *6. The government, however, is required to "comply both with the INA, 8 U.S.C. § 1231(b) and the Due Process Clause" before effectuating a third-country removal. *Id*. (citing *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019)); *see also Kumar v. Wamsley*, No. C25-2055KKE, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) (stating that "third country removals are subject to the same mandatory protections that exist in removal proceedings"). "To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country." *Sanchez*, 2026 WL 160882 at *6. Removal is expressly forbidden where a noncitizen's "life or freedom would be

ORDER - 11

threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." *Id*. (quoting 8 U.S.C. § 1231(b)(3)(A)) (internal quotation marks omitted). If a noncitizen expresses fear of removal to a designated third country, he or she is entitled to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Id*. (compiling cases in this District so concluding). Therefore, if Respondents seek to remove Mr. Ahmed to a third country, they must provide him notice and a meaningful opportunity in reopened removal proceedings to contest that removal for fear of persecution or torture in that country.

   3. <u>Mr. Ahmed's Request for an Injunction Prohibiting his Removal to any Third Country is Denied Without Prejudice.</u>

  Finally, Mr. Ahmed (1) argues that Respondents' efforts to remove him to a third country constitute a punitive third-country banishment that violates the Fifth and Eighth Amendments, and (2) seeks an order prohibiting his removal to any third country on that basis. (*See* Pet. at 21-23.) Respondents contend that the court should reject Mr. Ahmed's request to enjoin his removal to any third country because he "does not allege which third country he fears removal to, what harm he personally faces, or any circumstances that would make removal punitive in his case" and, as such, his allegations are "purely conjectural and nonjusticiable[.]" (Resp. at 19-20.) The court agrees with Respondents that, on this record, Mr. Ahmed has not demonstrated a likelihood of irreparable injury that would entitle him to permanent injunctive relief in the form of an order prohibiting Respondents from removing him to "any third country." *See Sanchez*, 2026 WL 160882 at *6 (citation omitted)); *see id*. (so concluding where petitioner "provide[d] no facts

ORDER - 12

specific to his circumstances that support[ed] enjoining Respondents from removing him to 'any third country,' such as identifying a target third country where he might suffer persecution or torture"). Therefore, the court declines to grant Mr. Ahmed a permanent injunction against removal to "any third country."

### IV.   CONCLUSION

For the reasons set forth above, the court GRANTS Mr. Ahmed's petition (Dkt. # 5) and ORDERS as follows:

(1) Finding that Mr. Ahmed is entitled to immediate release from custody, the court ORDERS that a Writ shall issue. The court DIRECTS Mr. Ahmed to file as soon as possible a proposed Writ of Habeas Corpus and to email a Word version to robartorders@wawd.uscourts.gov.

(2) If Respondents take steps to re-detain Mr. Ahmed, they must provide Mr. Ahmed with written notice and an opportunity to respond and/or contest the decision in a manner that comports with 8 C.F.R. § 241.13.

(3) If Respondents take steps to remove Mr. Ahmed to a country other than Somalia, they must provide Mr. Ahmed with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

(4) Within **FORTY-EIGHT (48)** hours of this Order, Respondents must provide the court with a declaration confirming that DHS has released Mr. Ahmed from custody.

Dated this 30th day of January, 2026.

JAMES L. ROBART
United States District Judge